IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-513-D

| | | |
|---|---|---|
| WILLIAMSON FARM, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DIVERSIFIED CROP INSURANCE | ) | |
| SERVICES, a/k/a CGB Diversified | ) | |
| Services, Inc., | ) | |
| | ) | |
| Respondent. | ) | |

On May 12, 2016, Williamson Farm ("Williamson") moved to confirm an arbitration award against Diversified Crop Insurance Services ("Diversified"). See [D.E. 1]. The arbitration concerned two crop insurance policies and resulted in an arbitration award of $639,929.44. See id.; see also [D.E. 1-1] (arbitration award). Williamson Farm seeks confirmation of the arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16. See [D.E. 1]; see also [D.E. 2].

On June 13, 2016, Diversified responded in opposition. See [D.E. 9]. Diversified argues that this court cannot confirm the arbitrator's award because the Federal Crop Insurance Corporation ("FCIC") has not determined that Diversified failed to comply with the insurance policies or FCIC procedures and that such failure resulted in Williamson receiving a payment in an amount less than what was due. See id. at 5–6 (discussing 7 C.F.R. § 400.352 and Common Crop Insurance Policy § 20(i), as reproduced in 7 C.F.R. § 457.8). Diversified also argues that the arbitrator exceeded her authority. See id. at 5–7.

On June 16, 2016, Williamson replied. See [D.E. 10]. Williamson argues that it need not obtain a determination from the FCIC before confirmation of the award and that the arbitrator did not

exceed her authority. See id.

On June 29, 2016, Diversified moved to vacate the arbitration award and filed a memorandum in support. See [D.E. 11, 12]. On July 19, 2016, Williamson responded in opposition to the motion to vacate [D.E. 14]. On August 3, 2016, Diversified replied [D.E. 15].

On July 12, 2016, this court asked the FCIC to submit an amicus brief addressing whether Williamson had to obtain an FCIC determination before confirmation of the award and whether the arbitrator exceeded her authority [D.E. 13]. On August 24, 2016, the FCIC responded and stated that Williamson had to obtain an FCIC determination before confirmation of the award and that the arbitrator exceeded her authority [D.E. 20]. On September 14, 2016, Williamson responded in opposition to the FCIC's amicus brief [D.E. 22]. On September 26, 2016, the FCIC replied [D.E. 23].

On November 1, 2016, this court heard argument on the motions from the parties and from the FCIC. See [D.E. 26]. Thereafter, parties submitted supplemental briefing. See [D.E. 29–31]. As explained below, the court grants Diversified's motion to vacate the arbitration award and denies Williamson's motion to confirm.

I.

Diversified is a private insurance company and sells insurance policies pursuant to FCIC regulations. Unlike typical private insurance agreements, the federal government backs the policies sold subject to FCIC reinsurance. Thus, these policies must adhere to governing regulations, which have the force of federal law. See Felder v. Fed. Crop Ins. Corp., 146 F.2d 638, 640 (4th Cir. 1944); Byrne v. Fed. Crop Ins. Corp., 289 F. Supp. 873, 874 (D. Minn. 1968); 7 C.F.R. § 400.168.

Congress established the federal crop insurance program to fill a crucial gap in the agriculture industry that private insurers left untouched because they "deemed all-risk crop insurance too great a commercial hazard." Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 383 n.1 (1947). Congress found

2

that a viable crop insurance system was necessary to preserve economic stability for crop producers. See 7 U.S.C. § 1502. As a result, Congress enacted the Federal Crop Insurance Act ("FCIA") and created the FCIC. See 7 U.S.C. §§ 1501–24, 31. "The FCIC operates under the supervision of the Risk Management Agency of the United States Department of Agriculture." Davis v. Producers Agric. Ins. Co., 762 F.3d 1276, 1284 (11th Cir. 2014). "The FCIC acts, when certain eligibility conditions are met, as reinsurer on crop insurance policies written by approved private insurers such as [Diversified]." Id.

"In order to qualify for reinsurance through the FCIC, the policies written by approved private insurers must comply with the FCIA and its accompanying regulations." Id. "Consequently, the FCIA generally establishes the terms and conditions of insurance even though the crop insurance policy is between the farmer and an approved insurance provider." Id. (quotations and alterations omitted). In fact, "7 C.F.R. § 457.8 includes text for a 'Common Crop Insurance Policy' used by insurers, standard throughout the industry, when the FCIC provides reinsurance." Id.

The FCIC determines "where crop insurance will be offered and on what crops, the levels of coverage, the expected market prices for crops, premium rates paid to insurers and the lack of insurability of certain risks." Id. at 1284–85. "The FCIC provides, as necessary, interpretations of the statute and regulations to interested parties." Id. at 1285. "The FCIC's interpretations, issued in the form of Final Agency Determinations ("FADs"), are 'binding on all participants in the Federal crop insurance program.'" Id. (quoting 7 C.F.R. § 400.765(c)). Additionally, the FCIC regulatory scheme preempts state law to the extent that the two conflict. See General Administrative Regulations; Crop Insurance; Preemption of State Laws and Regulations, 55 Fed. Reg. 23066-01, 23067, 1990 WL 342216 (June 6, 1990); 7 U.S.C. §§ 1501, 1506(l); 7 C.F.R. §§ 400.351–52. The FCIC regulatory scheme balances the need for crop insurance as a way to promote and stabilize agriculture markets

3

with the risk inherent in offering these policies by limiting the remedies available to claimants under the program.

"The standard language found in the regulations for inclusion in the common crop insurance contract provides that all disputes between insurer and insured are subject to mediation and/or arbitration." Davis, 762 F.3d at 1285; see 7 C.F.R. § 457.8 (Policy § 20(a)(1)). That same provision, however, explicitly requires that

> if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either [claimant] or [insurer] must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.

7 C.F.R. § 457.8 (Policy § 20(a)(1)). If a party to the arbitration is not satisfied with the results of the arbitration, the party may seek judicial review consistent with the Federal Arbitration Act ("FAA"). See 9 U.S.C. §§ 9–10; Farm Mgmt. Co. v. Rural Cmty. Ins. Agency, Inc., No. 14-CV-5024-EFS, 2015 WL 1809789, at *3–5 (E.D. Wash. Apr. 21, 2015) (unpublished); 7 C.F.R. § 457.8 (Policy § 20(c)).

On March 5, 2015, Williamson demanded an arbitration against Diversified over the non-payment of federally reinsured claims. See [D.E. 1] ¶ 1. The parties agreed on Catharine B. Arrowood as the arbitrator ("arbitrator"). See id. ¶ 4. The arbitrator conducted a two-day arbitration in April 2016, and each party presented evidence, examined or cross-examined witnesses, and presented issues for the arbitrator to review. See id. ¶¶ 5–9.

Williamson "is a North Carolina general partnership engaged in the farm business." Award [D.E. 1-1] ¶ 2. Diversified "employs a team of crop insurance agents who sell crop insurance policies to farmers . . . and administers those policies including claims which may arise from the policies." Id. During the arbitration Williamson alleged two contract claims under the policies it had purchased through Diversified—one for crop loss on farm 2172 ("farm 2172 claim") and one for a "prevented

4

planting loss" on farms 1870 and 4168 ("prevented planting claim"). Id. ¶ 5. Williamson also alleged several non-contract theories under North Carolina law including unfair and deceptive trade practices, fraud, fraud in the inducement, constructive fraud, breach of fiduciary duty, negligent misrepresentation, quantum meruit, and negligence. See id. ¶ 6.

The arbitrator found that Williamson had engaged in a "regular annual practice regarding crop insurance" whereby its insurance agent "would visit in the latter part of the year, discuss the planned planting and acreages . . . and recommend coverage for the coming year." Id. ¶ 18. According to the arbitrator's findings, "[a]s far as [Williamson] was aware, it had successfully insured all of its farms for 2013, as it had in previous years." Id. ¶ 34. The arbitrator also found that Diversified's agents shared this impression at that time. See id.

During 2013, Williamson "experienced a crop loss due to deer on Farm 2172" and "expected [the loss] to be covered by the crop insurance that they had purchased." Id. ¶ 36. Diversified denied that claim because Farm 2172 was located in a Montgomery County, but was listed on the insurance form as as being in Richmond County. Id. ¶ 37. The arbitrator found that this error was due to Diversified's agent who had prepared the form, and held that "[t]he lack of coverage for Farm 2172 indisputably arose from" the decisions of Diversified and its agents. See id. ¶¶ 38, 41.

Williamson also filed a prevented planting claim for farms 1870 and 4168 on the basis that excessively rainy weather had interfered with its ability to plant acres which it had intended to plant. See id. ¶¶ 46–47. Diversified denied this claim based on a clerical omission on reports to the Farm Service Agency ("FSA"). See id. ¶ 49. The arbitrator found that "the failure to report the acres" involved in this claim on the FSA report was "fatal to the[] prevented planting claim" and that Diversified's agent was responsible for this omission. See id. ¶¶ 48–49.

On May 11, 2016, the arbitrator found that the land in farms 2172, 1870, and 4168 was not

5

insured due to the mistakes or misdeeds of Diversified's agents. See id. ¶¶ 28, 32, 41–54. Nonetheless, the arbitrator awarded Williamson $639,929.44 based on extra-contractual legal theories, including negligence, breach of fiduciary duty, constrictive fraud, and the North Carolina Unfair and Deceptive Trade Practices Act. See id. Specifically, the award comprised $97,692.39 for the farm 2172 claim and $77,668.59 for the prevented planting claim, which the arbitrator "trebled pursuant to NCGS § 75-16.1." Id. ¶ 55. The arbitrator also awarded $98,852.50 in attorneys' fees and $14,994.00 in costs associated with the arbitration proceedings. See id. ¶¶ 55–57.

II.

"The scope of judicial review of an arbitration award is among the narrowest known at law." UBS Fin. Servs., Inc. v. Padussis, 842 F.3d 336, 339 (4th Cir. 2016) (quotation omitted); see MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849, 857 (4th Cir. 2010). "Courts may vacate or modify an arbitration award only under the limited circumstances listed in the Federal Arbitration Act . . . or under the common law if the award fails to draw its essence from the contract or evidences a manifest disregard of the law." Padussis, 842 F.3d at 339 (quotation omitted); see Three S Del., Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007).

In seeking vacatur, Diversified must show "one of the grounds specified in the [FAA] or one of certain limited common law grounds." MCI Constructors, LLC, 610 F.3d at 857; see Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 234 (4th Cir. 2006); Laschkewitsch v. Transamerica Life Ins. Co., No. 5:14-CV-632-D, 2017 WL 4485896, at *2 (E.D.N.C. July 17, 2017) (unpublished), aff'd, No. 17-1950, 2018 WL 1256531 (4th Cir. Mar. 12, 2018) (per curiam) (unpublished). Under the FAA, a court may vacate an arbitration award only on one of the following grounds:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of

6

them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 582–84 (2008); Campbell's Foliage, Inc. v. Fed. Crop Ins. Corp., 562 F. App'x 828, 831–32 (11th Cir. 2014) (per curiam) (unpublished). Diversified and the FCIC contend that this court must vacate the arbitration award because the arbitrator exceeded her powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. See 9 U.S.C. § 10(a)(4).

III.

An arbitrator's authority is limited to the issues committed to arbitration by the contract between the parties. In cases involving federally reinsured crop insurance, the insurance contract forms only one part of the agreement between the parties. See Davis, 762 F.3d at 1284. The statutes and regulations associated with the federal crop insurance scheme also limit the arbitrator's authority. See id. at 1284–85. Importantly, an arbitrator cannot interpret the meaning, scope, or applicability of the policy, but instead must obtain an interpretation of any ambiguous policy provision from the FCIC. See id. at 1285.

As mentioned,

[I]f the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 C.F.R. part 400, subpart X or such other procedures as established by FCIC.

**(i) Any interpretation by FCIC will be binding in any mediation or**

7

> **arbitration.**
>
> **(ii) Failure to obtain any required interpretation from FCIC will result in the nullification of any agreement or award.**

7 C.F.R. § 457.8 (Policy § 20(a)(1)) (emphasis added); see Davis, 762 F.3d at 1285; Garnett v. NAU Country Ins. Co., No. 5:09–CV–00144–R, 2009 WL 3644762, at *3 (W.D. Ky. Oct. 27, 2009) (unpublished). Furthermore, an arbitrator must abide by all FADs which interpret the regulations or the contract policy. See Davis, 762 F.3d at 1286–87; 7 C.F.R. § 400.765(c).

The arbitrator interpreted section 20(h) to allow the award of extra-contractual damages so long as the amount did not exceed the amount of liability established under the policy. See Award ¶ 13. Section 20(h) says that "no award or settlement in . . . arbitration . . . can exceed the amount of liability established or which should have been established under the policy, except for interest awarded in accordance with section 26." 7 C.F.R. § 457.8 (Policy § 20(h)).

As noted, the federal reinsurance scheme limits the damages which a claimant can recover. See Crop Insurance, 55 Fed. Reg. at 23067. To that end, the statute preempts state law remedies which might otherwise apply to the insurance contracts offered under the program. The statute states:

> [s]tate and local laws or rules shall not apply to contracts, agreements, or regulations of the [FCIC] or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations.

7 U.S.C. § 1506(l). Additionally, governing regulations state:

> No policy of insurance reinsured by the [FCIC] and no claim, settlement, or adjustment action with respect to any such policy shall provide a basis for a claim of punitive or compensatory damages or an award of attorney fees or other costs against the Company issuing such policy, unless a determination is obtained from the [FCIC] that the Company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by the [FCIC] and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled.

7 C.F.R. § 400.176(b). Thus, extra-contractual "damages, fees and costs are preempted unless FCIC determines the insurance provider, agent, or loss adjusters failed to follow FCIC approved policy or procedure." FCIC Response to Comments, 69 Fed. Reg. 48652-01, 48726–27 (Section 25—Limitation of the Right to Collect Extra Contractual Damages) (Aug. 10, 2004). Furthermore, binding agency decisions foreclose the possibility of awarding damages under extra-contractual theories, such as state tort law or a state unfair and deceptive trade practices statute. See FAD-211 [D.E. 12-4].

The arbitrator based Williamson's award on theories of recovery other than the contract between the parties. With respect to the crop loss claim for farm 2172, the arbitrator found that the farm was uninsured, and therefore not covered by the policy, yet awarded damages in "negligence, breach of fiduciary duty[,] and constructive fraud" because she attributed the lack of coverage to Diversified and its agents. See Award ¶¶ 28, 32, 41–42. Similarly, with respect to the prevented planting claims for farms 1870 and 4168, the arbitrator found that the farms were not insured under the policy but awarded damages in "negligence, breach of fiduciary duty[,] and constructive fraud" because of Diversified and its agents' role in the reporting errors that were the basis for the denial of coverage. See id. ¶¶ 46–51. The arbitrator then trebled the awards under North Carolina's Unfair and Deceptive Trade Practices Act. See id. ¶ 55. These awards, as well as the attorneys fees, are extra-contractual damages based on state law claims including negligence, breach of fiduciary duty, constructive fraud, and unfair and deceptive trade practices. The arbitrator made these awards even though the FCIC made no determination under 7 C.F.R. § 400.176(b) that Diversified "its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by the [FCIC] and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled." 7 C.F.R. § 400.176(b). The arbitrator's award of these extra-contractual damages, and the arbitrator's interpretation of section 20(h) to permit the award, exceeded

9

the scope of the arbitrator's authority. See FAD-211; see also Mann v Fed. Crop Ins. Corp., 710 F.2d 144, 147 (4th Cir. 1983) ("An agent of the FCIC could not extend crop insurance where there was none because the doctrine of estoppel cannot extend coverage beyond that authorized by Congress and the rules promulgated by the FCIC."); Pelzer v. Armtech Ins. Servs., Inc., 928 F. Supp. 2d 1071, 1079 (E.D. Ark. 2013) ("[T]o reform the contracts in that manner would mean that a central provision of the contract had been waived or varied based on the statements by an agent, which is explicitly barred by the insurance policy itself.").

The arbitrator also interpreted section 20(i) to be a "condition precedent" to the award of attorneys' fees, punitive, or compensatory damages, believing that it requires an FCIC interpretation before a court will enforce an award, but not before an arbitral award can be made. See Award ¶ 12. Williamson repeats this interpretation in its reply, arguing that section 20(i) does not affect the arbitration, but applies only in the case of a judicial review. Williamson then argues that in this case "[n]o review is requested from this [c]ourt, only a confirmation of the Award." [D.E. 10] 2. In support, Williamson cites Great American Insurance Co. v. Moye, where the district court confirmed an arbitral award notwithstanding the lack of an FCIC interpretation. See 733 F. Supp. 2d 1298, 1305–06 (M.D. Fla. 2010).

Moye does not help Williamson. In Moye, the court held that the arbitrator did not engage in a policy interpretation, but rather engaged in an appropriate factual inquiry. See id. The same principle does not apply in this case.

Section 20(i) says:

> In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us only if you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were

10

entitled.

7 C.F.R. § 457.8 § 20(i). The arbitrator's award interprets section 20(i) to permit an arbitrator to award attorneys fees without the required determination. See Award ¶ 12. Not only did the arbitrator interpret this section without FCIC guidance, the award itself includes an allocation of attorneys fees that section 20(i) prohibits. See id. ¶¶ 12, 45, 54, 56, 57.

The arbitrator's interpretation and award are not permitted under section 20(i). Before the arbitrator's decision, the FCIC published FAD-193 clarifying that the FCIC determination required by section 20(i) is not a "condition precedent" to judicial enforcement, but instead that damages such as attorneys' fees may be sought only during an appeal to the courts after an FCIC determination has been obtained, and cannot ever be awarded in arbitration. See FAD-193 [D.E. 9-3]. Thus, the arbitrator not only engaged in prohibited interpretation of the policy and award prohibited damages, but the arbitrator disregarded a published FAD to do so. See id. These actions exceeded the arbitrator's powers under the policy. See Vaughn v. Producers Agric. Ins. Co., No. 1:14CV12-MW/GRJ, 2014 WL 11511066, at *2 (N.D. Fla. Nov. 3, 2014) (unpublished); Lindsey v. Producers Agric. Ins. Co., No. 13-14420-CIV-GRAHAM/LYNCH, 2014 WL 12214321, at *2–3 (S.D. Fla. July 21, 2014) (unpublished); Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co., No. CV-13-141-PHX-SRB, 2013 WL 12099362, at *6 (D. Ariz. May 1, 2013) (unpublished).

Finally, Williamson argues that this court must uphold the arbitrator's decisions, even if erroneous, given the high degree of deference accorded to arbitrators under the FAA. See [D.E. 10] 5–7; Harrell & Owens Farm v. Fed. Crop Ins. Corp., 4:09-CV-217-FL, 2011 WL 1100265, at *7 (E.D.N.C. Mar. 23, 2011) (unpublished), aff'd, 471 F. App'x 141 (4th Cir. 2012) (per curiam) (unpublished); Moye, 733 F. Supp. 2d at 1302. This argument fails. Although courts must defer to arbitrators on the issues within their purview, the arbitrator cannot exceed the powers granted to the

11

arbitrator in the contract. See 9 U.S.C. § 10(a)(4).

In Davis, the Eleventh Circuit described an exception to the interpretation requirement in section 20(a). 762 F.3d at 1286. Arbitrators need not obtain an interpretation from the FCIC where the agency already issued a final decision on the matter. See id. Davis, however, offers no help to Williamson because the FCIC's binding interpretations for sections 20(h) and 20(i) do not support the arbitrator's position. See FAD-193; FAD-211; Vaughn, 2014 WL 11511066, at *2; Lindsey, 2014 WL 12214321, at *2–3.

The regulations and FADs mandate that an award made without an appropriate interpretation from FCIC should be "nullified." See 7 C.F.R. § 457.8 (Policy § 20(a)(1)(ii)); FAD-225 [D.E. 12-5]. Under the FAA courts may "vacat[e] the award . . . where the arbitrator[] exceeded [her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4); see Great Am. Ins. Co. v. Russell, No. 16-09001-MC-SJ-DW, 2017 WL 4750630, at *2 (W.D. Mo. Apr. 14, 2017) (unpublished); Garnett 2009 WL 3644762, at *4. Here, the arbitrator exceeded her powers by impermissibly interpreting section 20(h) and 20(i) and awarding extra-contractual damages. Thus, the court vacates the award.

IV.

In sum, the court GRANTS Diversified's motion to vacate the arbitration award [D.E. 11], and DENIES Williamson's motion to confirm [D.E. 1].

SO ORDERED. This 26 day of March, 2018.

JAMES C. DEVER III
Chief United States District Judge